# Parks *v.* Penna. Clay Co., Appellant, (No. 2).

*Ejectment—Mesne profits—Damages—Evidence.*

Trespass for mesne profits is an emanation from the action of ejectment. When the plaintiff in ejectment has been placed in possession of his land and institutes his action for mesne profits, only

such lands are affected by such action as were embraced in the action of ejectment.

Argued May 12, 1915.   Appeal, No. 126, April T., 1915, by defendant, from judgment of C. P. Beaver Co., March T., 1909, No. 174, on verdict for plaintiff in case of Mary D. Parks, Administratrix of the Estate of James I. Parks, deceased, v. Pennsylvania Clay Company.   Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.  Judgment modified.

Trespass for mesne profits.   Before HOLT, P. J.
See Parks v. Pennsylvania Clay Company (No. 1), supra.
The facts are stated in the opinion of the Superior Court.
When W. A. Park was on the stand he was asked this question:
Q. Do you know, Mr. Park, whether all of the clay that was manufactured by this plant was taken out through this shaft?
A. It was.
Q. What was this plant called there?
A. No. 2 factory.
Q. It was also called the upper—?
A. We always designated them as No. 2 and No. 3.
Q. That was plant No. 2?
A. That was plant No. 2; and on our books we just simply called it No. 2, in our pay rolls and so forth.
Q. Were you connected with the operations of the North Shore Railroad?
A. Yes, I was.
Q. Did you make up this record here?
A. I did.
Q. You may give us by refreshing your recollection from that record the product of that plant, or the amount of clay taken from it and shipped during the period you have testified to?

Counsel for the defendant object, because it would not show, by any stretch of the imagination, what was taken out of this 65 acres. So that there be no misunderstanding, the access to this clay land was through the entry here, and it would be impossible to prove the different parts of the mine from which the clay was taken, the amounts and dates.

By the Court: Of course, they will have to prove that the clay came from the Park land. We will require them to prove the clay that was taken from the James I. Parks land.

By Mr. Hogan: We are entitled to damages whether they took it from this land or somebody's else's land; they took it over the mining facilities there, and they would have to pay mesne profits.

The Court: You would have to show what they took out of it over those appliances, and show what that would be worth.

By Mr. Hogan: We can show the whole amount they took out. We are entitled to recover whatever the mesne profits for the use of our mining facilities and appliances; and in addition to that we can show the actual value of the clay that they took from the 63 acres and 120 perches; that they use the mine, and abandoned it, and the mine fell in; that the plaintiff has not been and is not able to make a survey; and we think the witness may show all these things.

The Court: Your proof would be that you are undertaking to recover the mesne profits for the use of those appliances. We will permit you to prove what depreciation there was; not for the purpose of enabling you to recover a distinct item, but as having a bearing on the value of the use of the property.

By Mr. Hogan: We are seeking to recover the use value of it.

The Court: We will permit you to prove the use value, but not by proving the tons of clay that were brought out of the mine. We will permit you to prove what the

value of the use of those mining facilities was.    I think
I will permit you to prove what those appliances were
reasonably worth by way of rental for the purpose for
which they were used.    We will permit you to show
what was taken out of this land; and if part of it came
from beyond the boundaries of this land, through this
land, that may be a matter of defense.    I said we would
require them to prove what they took out of this land.

By Mr. Moorhead: They're not offering to prove that,
they are offering to prove how much was hauled by the
railroad.

The Court: If the defense can show that there was a
hauling not only of clay from this land but clay from
other lands, I think we would have to hold that the plain-
tiff would have to separate the items, and show the value
of the clay taken from this land.

By Mr. Moorhead: That is the reason I object now.

The Court: But until the defense comes in in an ef-
fort to show that clay was brought from other land, I
think the plaintiffs would be entitled to prove what came
out through this shaft.    I think, Mr. Moorhead, we will
hear the evidence as to the quantity which came out
through this shaft; then if it should appear by counter
proofs that the clay came from other sources, the burden
would be on the plaintiff to take it and separate it.

By Mr. Moorhead: They are offering to prove what
was hauled on a railroad, not what came through the
mine.

The Court: If you haul 100 tons of fire brick from a
given location, it is not difficult to estimate the number
of tons of clay required to make 100 tons of brick.

By Mr. Moorhead: The plaintiff's proof here is the
quantities taken out; and we object to this sort of proof,
for the reason that there would be no way to determine
whether or not they were hauling brick that were made
and stored there, or hauling clay brought in from other
sources.    We have no record.    Mr. Park was running a

railroad, and he may have hauled great quantities of clay and brick. We do not know anything about that.

The Court: There might be a way of determining the number of tons of clay coming from the mine, and the number of brick made out of it. The objection is overruled.

An exception noted and bill sealed to the defendant. (7)

The court charged in part as follows:

["We say to you that under the facts in this case, as we view them, the declaration of forfeiture which was offered here, standing alone, is not binding upon the estate of James I. Parks, deceased."]

["The claim here is for compensatory damages; that is damages or fair compensation for the clay mined and taken away by the defendant; and as we have already said, in addition thereto, damages for the use of the shaft and certain fixtures connected with the mine, and also a claim which we have omitted heretofore to mention, for damages for letting water accumulate in the mine; and for otherwise permitting the shaft to fall into decay."] (2)

["So we say to you, gentlemen, that you will dispose of this case, treating the shaft as the property of the estate of James I. Parks, deceased."] (7)

Defendant presented these points:

1. Under all the evidence, the verdict must be for the defendant.

Answer. That point is reserved. (4)

2. Under all the evidence, the verdict as to the claim for use of the shaft must be for the defendant.

Answer. That point is reserved. (5)

3. If the jury believe from the evidence that clay had not been mined for a long time, over a year, then the verdict as to the claim for the shaft must be for the defendant.

Answer. That point is reserved. (6)

Verdict and judgment for plaintiff for $816. Defendant appealed.

*Errors assigned* were above instructions and rulings.

*F. G. Moorhead,* with him *John G. Marshall,* for appellant.

*Clyde Holt,* with him *James L. Hogan,* for appellee.

OPINION BY KEPHART, J., July 21, 1915:

Plaintiff brought this action to recover mesne profits for the use and occupation of certain land recovered in an action of ejectment. Trespass for mesne profits is an emanation from the action of ejectment. When the plaintiff in ejectment has been placed in possession of his land and institutes his action for mesne profits, only such lands are affected by such action as were embraced in the action of ejectment. Plaintiff's statement avers that by virtue of an action of ejectment Parks was repossessed of the fire clay under a tract of land containing sixty-three acres and 121 perches, together with the shaft sunk for the purpose of taking out said clay; that while the defendant was in the full possession of said tract of land it proceeded to mine and take away the clay from said tract of land, and to use the tracks, cars and other mining equipment of the plaintiff therein. When the action was tried in the court below a claim was presented for the use of a shaft and certain fixtures. The shaft and fixtures were not a part of the land described in the ejectment. This shaft, with other privileges, was acquired under a lease from Anna Hetchie. It may be that the holding of this piece of land with the rights therein mentioned was convenient for the operation of the land embraced in the ejectment. It is certain that in the execution of the writ of habere facias the plaintiff could not secure possession of the leased premises, if it was held adversely, unless the property and rights embodied in the lease were described with sufficient accuracy to enable the officers to locate the premises leased. The verdict in the ejectment was for

the clay only under the sixty-three acres of land. In the ejectment the title to the leased premises was not in any manner controverted, nor the ownership of the premises determined.

In an action for mesne profits following a recovery in ejectment, if the defendant voluntarily surrenders to the plaintiff the occupation of a piece of land not embraced in such proceedings, but which is so connected and associated with the enjoyment of the land recovered in the ejectment that its use may be said to be a necessary part thereof, there is no reason why in this action for mesne profits a count could not properly be included to embrace damages for the use and occupation of this land. No such averment appears in the plaintiff's statement.

The statement did not contain any specific claim for the use and occupation of the land specified in the lease nor any of the rights and privileges therein mentioned. The evidence sustaining the claim for use and occupation was general, covering the use made by the defendant of the land embodied in the lease as well as the land the title to which was determined in ejectment. On this leased land the plaintiff had erected a shaft through which the defendant, during wrongful holding, had transported fire clay from his own land and the land owned by the plaintiff. To sustain his claim for damages, the plaintiff proved title to the leased premises. This title was disputed by the defendant. It was claimed that the leased premises had been abandoned because the plaintiff had failed to keep the lease alive by continuing to make brick as provided in the lease, and the defendant took possession of the property at the instance of the owner, Anna Hetchie. Whether or not the defendant abandoned the premises by failure to make brick would, in a proper case, be a question of fact for the jury. An ex parte declaration of forfeiture was not evidence of abandonment. What was done by the lessee, testified to by witnesses, was the only competent evidence to establish abandonment. The

mere suspension of the use through business conditions or other satisfactory reason would not work a forfeiture. The defendant's fifth assignment of error, being the second point presented to the trial court for instructions, substantially raises all the questions here involved. This assignment is sustained.

The plaintiff, by producing railroad scale weights, showed the tons of clay taken through the shaft out of the mines. This evidence would be competent if it had appeared that all of this clay came from the plaintiff's land. Clay was removed from both properties. The plaintiff could not tell how much clay was taken from her land and how much from the defendant's, as the mine was filled with water. Without some knowledge as to the different proportions removed, the jury would not be permitted to guess as to the number of tons taken from the plaintiff's land, and the testimony offered was wholly unreliable to establish approximately the amount taken from the plaintiff's land. The defendant, however, submitted evidence as to the number of tons moved and the jury, by their verdict, in specifying damages for this item, evidently declined to consider the plaintiff's testimony with respect to the number of tons of clay moved and accepted the tonnage given by the defendant. As stated by the appellee, this amount would recognize the value of the clay moved, with interest. This much of the verdict is sustained.

The court below withdrew from the jury any consideration as to the damages for allowing water to accumulate in the mine and otherwise permitting the shaft to fall into decay. This was not a proper claim under the statement. It appears from the plaintiff's testimony that the shaft was used until December, 1907, when possession was relinquished by the defendant to the plaintiff. The defendant would not be responsible for the accumulation of natural mine drainage nor for what occurred after its actual surrender of possession. As the court withdrew the claim from the jury's con-

Opinion of the Court.   [60 Pa. Superior Ct.

sideration, the evidence, while it might have a tendency to have enlarged the plaintiff's claim with respect to use and occupation of the shaft, we think would have no bearing on the value of the clay mined out, the verdict for which is here permitted to stand.

All of the assignments of error, with the exception of the fifth, are overruled.   The judgment of the court below is modified by reducing the verdict to the sum of $180, being the amount specifically found by the jury for the clay mined, with interest, and as thus modified, the judgment is affirmed at the cost of the appellee.